# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

---

THE GEO GROUP, INC.,

        Plaintiff,

- against -

PHILIP D. MURPHY, in his official capacity as Governor of New Jersey; and MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey,

        Defendants.

Case No. 3:24-cv-4990

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

DAVIS WRIGHT TREMAINE LLP
Geoffrey S. Brounell
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
geoffreybrounell@dwt.com

THE GEO GROUP, INC.
Scott A. Schipma
(*pro hac vice application forthcoming*)
4955 Technology Way
Boca Raton, FL 33431
scott.schipma@geogroup.com

*Attorneys for Plaintiff The GEO Group, Inc.*

# INTRODUCTION

1. Plaintiff The GEO Group, Inc. ("GEO") brings this action for declaratory and injunctive relief against Governor Philip D. Murphy and Attorney General Matthew J. Platkin ("Defendants") concerning New Jersey Assembly Bill 5207 ("AB-5207"), L.2021, c. 199, §§ 1-2, codified at N.J. Stat. Ann. §§ 30:4-8.15 to 8.16.

2. AB-5207 undermines and blocks implementation and enforcement of congressionally funded and approved federal immigration law by U.S. Immigration and Customs Enforcement ("ICE" or the "Agency") within the State of New Jersey. In particular, AB-5207 prohibits ICE from entering into contracts with private service contractors—like GEO—for the detention of individuals by the federal government.

3. GEO contracts with ICE throughout the United States for a variety of services, including the provision of secure residential care services at contracted federal immigration processing centers. GEO currently contracts with ICE for the provision of secure residential care services at 20 different facilities in the United States with a total capacity of approximately 19,000 beds.

4. GEO owns Delaney Hall (the "Delaney Hall Facility"), a facility located at 451 Doremus Avenue in Newark, New Jersey, which has a permitted use capacity of approximately 1,196 beds. At various times since its opening in 2000,

the Delaney Hall Facility has held federal, state, and county detainees. From 2011 through 2017, ICE previously contracted to house up to 450 immigration detainees at the Delaney Hall Facility, including detainees from Texas, Louisiana, and other locations throughout the United States

5. Before AB-5207 was enacted, ICE awarded and administered three (3) contracting agreements that provided for the detention of detainees in the state of New Jersey. Since 2021, all three (3) of those agreements have been terminated, and at least one of those terminations, was based on the enactment of AB-5207.

6. On May 30, 2023, the United States Department of Homeland Security ("DHS"), on behalf of ICE, released a Request for Information ("RFI") to "identify possible detention sites to house non-citizens and immigration violators in support of its public safety mission under the authority of the Immigration and Nationality Act (INA), as amended." The RFI noted that the detention site would be overseen by the ICE Newark Field Office, and would serve ICE needs throughout the United States. The RFI noted that, preferably, the facility will be located within a 50-mile ground commute distance from the Newark Field Office and would be capable of providing 500 to 600 beds. ICE received four (4) responses to this request. A true and correct copy of the RFI is attached as **Exhibit A**.

7. On June 13, 2023, GEO responded to the RFI by proposing the use of the Delaney Hall Facility, located in Newark, New Jersey, less than 5 miles from

ICE's Newark Field Office, to meet the Agency's expressed need for the housing of immigration detainees.

8. DHS, on behalf of ICE, released a subsequent document on January 25, 2024, via its Acquisition Planning Forecast System (the "Acquisition Planning Forecast") expressing an intention to enter into an Indefinite Delivery Contract for comprehensive detention services at a contractor-owned/contractor-operated detention facility with the capacity to house up to 600 non-citizens along with armed and unarmed guard transportation services in and around Newark, New Jersey. A true and correct copy of the Acquisition Planning Forecast is attached as **Exhibit B**.

9. The Acquisition Planning Forecast indicates that a contract for the subject immigration detention services is imminent, identifying an Estimated Solicitation Release Date of March 2024 and an Anticipated Award Date of Q3 FY 2024. *Id*. at 1

10. On April 5, 2024, ICE issued a press release noting:

U.S. Immigration and Customs Enforcement leadership met with the GEO Group this week as part of ongoing engagement with detention contractors. The use of private detention contractors is a vital piece of the national detention system enabling ICE to successfully execute its mission with less than 4% of facilities being ICE owned and operated. The ability for the agency to remove individuals to their home countries, hold those in custody who require detention and are a public safety threat is directly dependent on location and availability of detention space. ICE continues to modernize the immigration system as resources allow to realize cost efficiencies across the operational landscape.

A true and correct copy of ICE's April 5, 2024, press release is attached as **Exhibit C**.

11. GEO has spent several millions of dollars for Delaney Hall physical plant and equipment upgrades to conform to the latest ICE operating and performance standards. Further, GEO staff are currently preparing a proposal for submission to ICE for a contract to provide immigration detention services at the Delaney Hall Facility.

12. Based on the expressed intentions of DHS/ICE to solicit private contractors for the provision and servicing of a federal immigration center in the State of New Jersey and the prior use of the Delaney Hall Facility by ICE for such purpose, GEO has a realistic chance to be awarded a contract by ICE for the provision of immigration detention services at the Delaney Hall Facility, but for the effect of AB-5207.

13. ICE is very much aware of the restrictions in AB-5207, and has expressed its concern that AB-5207 impairs its ability to strategically plan for necessary immigration detention capacity in New Jersey. This concern could impact ICE's ongoing procurement efforts and cause ICE to take a precautionary approach and not risk violations of AB-5207 that might result from selecting GEO or one of the other three (3) potential detention service providers that responded to the RFI for a contract award.

14. Based on 1) the expressed need of DHS / ICE for additional secure residential immigration bed capacity in the state of New Jersey, 2) the expressed intention of DHS / ICE to solicit private contractors such as GEO for the provision of such additional bed capacity and related services, and 3) GEO's expressed interest and ability to provide the required additional bed capacity and services at its Delaney Hall Facility, GEO's ability to timely respond to and meet the requirements of any such solicitation and to be awarded a contract for the provision of solicited secure residential immigration services will be severely limited and impaired unless this Court enjoins the enforcement of AB-5207 by Defendants against GEO.

15. The federal government has express statutory power to detain individuals in connection with federal immigration proceedings (8 U.S.C. § 1231(g)(1)), and to make arrangements with third parties to house federal detainees in contracted facilities. *Id.* Yet, under AB-5207, it is illegal for the federal government to enter into such third-party contracts for the provision and servicing of immigration detention/processing facilities in the State of New Jersey.

16. Any State law that interferes with or is contrary to the laws of Congress is invalid pursuant to Article VI, ¶ 2 of the United States Constitution (the "Supremacy Clause"). The immunity of the federal government from state regulation is a fundamental principle of the Constitution.

17.  In August of 2023, the Honorable Robert Kirsch, United States District Judge, issued an opinion finding AB-5207 unconstitutional and enjoined its enforcement by the same Defendants named in this Complaint against another ICE private services provider, CoreCivic, Inc. ("CoreCivic"), following a hearing on a lawsuit filed by CoreCivic against Defendants. *CoreCivic, Inc. v. Murphy*, No. CV 23-967 (RK) (TJB), 2023 WL 5556025 (D.N.J. Aug. 29, 2023) (the "*CoreCivic* decision"), *appeal filed*, No. 23-2598 (3d Cir. Sept. 7, 2023). That injunction, however, only enjoined Defendants "from enforcing AB 5207 against [CoreCivic]". *Id.* at *21.

18.  GEO seeks the same relief in this lawsuit. AB-5207 seeks to directly regulate the authority of the federal government in its exercise of sovereign powers within the supreme sphere of federal action by ostensibly prohibiting ICE from entering into a contract with GEO for immigration detention services in the State of New Jersey. For the reasons set forth in the *CoreCivic* decision, this Court should declare that AB-5207 is unconstitutional and/or preempted by federal law and enter a preliminary and permanent injunction restraining Defendants from enforcing AB-5207 against GEO.

## JURISDICTION AND VENUE

19. This Court has jurisdiction under 28 U.S.C. § 1331 because the question of whether AB-5207 violates the United States Constitution or is preempted by federal law is a federal question.

20. This Court also has jurisdiction under 28 U.S.C. § 1332(a) and (a)(1) because GEO and Defendants are citizens of different states and the value of the declaratory and/or injunctive relief sought by GEO exceeds $75,000, exclusive of interest and costs.

21. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred, or a substantial part of the property that is the subject of this action is situated, in this District. The Delaney Hall Facility is located in this District, and the effects of AB-5207 are being and will continue to be felt in this District.

22. GEO seeks relief on all claims pursuant to 28 U.S.C. §§ 2201 and 2202 (declaratory judgment), 42 U.S.C. § 1983, and 42 U.S.C. § 1988 (right to costs, including attorneys' fees).

## THE PARTIES

23. Plaintiff The GEO Group, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business located at 4955 Technology Way, Boca Raton, FL 33431.

24. Defendant Philip D. Murphy is a citizen of New Jersey and the Governor of the State of New Jersey. He is vested with "[t]he executive power" of the State of New Jersey and is charged with "tak[ing] care that the laws be faithfully executed." N.J. Const. art. V, § 1, ¶¶ 1, 11. "To this end," he has "power, by appropriate action … to enforce compliance with any constitutional or legislative mandate[.]" *Id.* ¶ 11. The Office of the Attorney General, as a principal department of the State, falls "under the supervision of the Governor," and the Attorney General is appointed by the Governor and serves at the Governor's pleasure. N.J. Const. art. V, § 4, ¶ 3. In light of these duties, Governor Murphy has responsibility for enforcing AB-5207. He is sued in his official capacity. Upon information and belief, Governor Murphy is represented by the Attorney General's office, which has a principal place of operation at Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08611.

25. Defendant Matthew J. Platkin is a citizen of New Jersey and the Attorney General of the State of New Jersey. He is the State's chief law enforcement officer, and heads the State's Department of Law and Public Safety. N.J. Stat. Ann. § 52:17B-2. In light of these duties, Attorney General Platkin has responsibility for enforcing AB-5207. He is sued in his official capacity. The Attorney General's principal place of operation is located at Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08611.

## FACTUAL ALLEGATIONS

### I. AB-5207 and Immigration Detention in New Jersey

26. On January 4, 2021, AB-5207 was introduced in the New Jersey Legislature.

27. AB-5207 prohibits agreements to detain people for civil immigration purposes, and specifically prohibits the State, local government agencies, and private detention facilities from entering into, renewing, or extending immigration detention agreements.

28. As enacted, the legislation provides in its entirety:

**30:4-8.15. Legislative findings and declarations relating to immigration detention agreements**

The Legislature finds and declares that:

a. It is the responsibility of the State to ensure respect for the human rights and civil rights of all people detained within New Jersey.

b. It is the responsibility of the State to protect the health and safety, including the physical and mental health, of individuals detained within New Jersey.

c. Detention centers and correctional facilities in New Jersey have a history of poor conditions, including inadequate medical and mental health care, use of isolated confinement, and incidents of violence and retaliation against people in detention.

d. In keeping with its obligation to protect and advance the health and just treatment of all people within the State of New Jersey, it is therefore the intent of the Legislature to prevent new, expanded, or renewed agreements to detain people for civil immigration purposes.

**30:4-8.16. Prohibition of immigration detention agreements; definitions**

a. As used in this act:

"Immigration detention agreement" means any contract, agreement, intergovernmental service agreement, or memorandum of understanding that authorizes the State, local government agency, or private detention facility to house or detain individuals for civil immigration violations.

"Local government agency" means a county, county sheriff, municipality, or other political subdivision and any agency, officer, employee, or agent thereof.

"Private detention facility" means any privately owned or operated facility that houses or detains individuals for civil immigration violations.

b. On or after the effective date of this act:

(1) the State or a local government agency shall not enter into, renew, or extend any immigration detention agreement as defined in subsection a. of this section; or

(2) a private detention facility operating in this State shall not enter into, renew, or extend any immigration detention agreement as defined in subsection a. of this section.

c. Nothing in this section shall be construed to prohibit, or in any way restrict, any action where the prohibition or restriction would be contrary to federal law, the United States Constitution, or the New Jersey Constitution.

29. The Delaney Hall Facility is a "private detention facility" as defined in AB-5207, and the contract anticipated to be entered into by ICE for the use of a private detention facility as described in the RFI and the Acquisition Planning Forecast is an "Immigration detention agreement," within the meaning of AB-5207 § 30:4-8.16(a). If enforced, AB-5207 § 30:4-8.16(b)(2) would prevent GEO from entering into a contract with ICE to provide the services described in the RFI and

10

Acquisition Planning Forecast. AB-5207, if applied to GEO, will significantly reduce ICE's immigration detention capacity in New Jersey and harm GEO by denying GEO the opportunity to provide contracted services to ICE.

30. Governor Murphy signed AB-5207 into law on August 20, 2021, and the statute took immediate effect.

## II. U.S. Immigration and Customs Enforcement Detention Facilities

31. ICE manages and oversees the nation's civil immigration detention system.

32. Congress reassigned the border-enforcement functions formerly assigned to the Immigration and Naturalization Service to the Bureau of Immigration and Customs Enforcement, part of the DHS, in November 2002. The Bureau of Immigration and Customs Enforcement began operations in March 2003 and was renamed U.S. Immigration and Customs Enforcement in March 2007.

33. Congress has authorized or required the detention of aliens under several different statutes and conditions. *See*, *e.g.*, 8 U.S.C. §§ 1225(b)(1)(B)(ii), 1225(b)(2)(A), 1226(a), 1226(c).

34. Congress has also directed that the Secretary of Homeland Security "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," 8 U.S.C. § 1231(g)(1),[1] and instructed that ICE

---

[1] The authority granted to the Attorney General by §1231(g) and related provisions

"shall consider the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility for [detention]" "[prior] to initiating any project for the construction of any new detention facility," *id.* § 1231(g)(2). Thus, Section 1231(g)(2) authorizes ICE to use private contractors to arrange for detention.

35. The Secretary also has "authority to make contracts … as may be necessary and proper to carry out the Secretary's responsibilities." 6 U.S.C. § 112(b)(2). And pursuant to federal regulations, the Secretary may "delegate broad authority to manage the agency's contracting functions to heads of such contracting activities." 48 C.F.R. § 1.601(a). ICE officials "may enter into contracts of up to fifteen years' duration for detention or incarceration space or facilities, including related services." 48 C.F.R. § 3017.204-90.

### III. The Restrictions Imposed by AB-5207 are Unconstitutional

36. On September 26, 2022, the *en banc* U.S. Court of Appeals for the Ninth Circuit in *Geo Group, Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022), considered a challenge to a materially identical California statute (Assembly Bill 32), which barred private companies from entering new contracts with any government—including the federal government—to operate jails, prisons, or

---

now resides in the Secretary of Homeland Security and divisions of his Department, including ICE.

detention centers in the state after January 1, 2021, and set a deadline of 2028 for all existing contracts to end. The Court found that GEO, as Plaintiff, had established a likelihood of success on its challenge to the law, and granted a preliminary injunction against its enforcement.

37. On August 29, 2023, District Judge Robert Kirsch issued the *CoreCivic* decision and entered an order granting summary judgment to CoreCivic and finding AB-5207 unconstitutional as applied against CoreCivic and its provision of detention services in New Jersey under contract with ICE.[2]

38. As a result of that August 29, 2023, judgment, Defendants should be precluded in this action from contesting that AB-5207 is unconstitutional under the Supremacy Clause. *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1232 (3d Cir. 1995) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 (1979)). Even if preclusion were not to apply, however, the Court should grant the relief requested for the same reasons set forth in the *CoreCivic* decision.

## IV. Financial Impact of AB-5207 on GEO

39. If AB-5207 eliminates GEO's ability to offer the Delaney Hall Facility to meet the detention requirements in the Acquisition Planning Forecast, GEO would lose the opportunity to obtain a contract with an estimated value of over $100 million.

---

[2] As noted, this decision is on appeal, No. 23-2598 (3d Cir. Sept. 7, 2023).

40. The Delaney Hall Facility has a fair market value of approximately $100 million. GEO has expended more than $5 million to ensure that the Delaney Hall Facility meets applicable federal detention standards and is ready for re-use as an immigration detention facility. GEO's investments in the Delaney Hall Facility will be impaired if AB-5207 eliminates the use of GEO's Delaney Hall Facility by ICE for civil immigration detention.

## COUNT I
## FEDERAL PREEMPTION OF STATE LAW

41. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

42. Federal immigration law provides that ICE "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal," and "[w]hen United States facilities are unavailable or facilities adapted or suitably located for detention are unavailable for rental, the Attorney General [now ICE] may expend … amounts necessary to acquire land and to acquire, build, remodel, repair, and operate facilities … necessary for detention." 8 U.S.C. § 1231(g)(1).

43. Congress has instructed that ICE "shall consider the availability for purchase *or lease* of any existing prison, jail, detention center, or other comparable facility suitable for [detention]" before beginning any project to develop a new detention facility. 8 U.S.C. § 1231(g)(2) (emphasis added).

14

44. Section 1231(g)(1) vests ICE with broad discretion to determine where aliens are detained. See also 28 U.S.C. § 530C(a)(4) (authorizing Attorney General/ICE, in their "reasonable discretion," to carry out the activities of the Department of Justice "through any means," including "through contracts, grants, or cooperative agreements with non-Federal parties").

45. By prohibiting its use of "private detention facilities," AB-5207 dramatically reduces ICE's discretion in locating federal immigration detainees and prisoners throughout the District and the State and prohibits a means of federal detention that Congress authorized. It frustrates Congress's delegation of discretion to ICE to discharge its constitutional and statutory responsibilities, and impermissibly regulates the federal government's contracting decisions by effectively displacing the federal government's determination of what immigration detention facilities are "appropriate." 8 U.S.C. § 1231(g)(1).

46. AB-5207 is therefore in conflict with federal immigration law, interferes with the purpose behind federal immigration law, presents a substantial obstacle to the purposes of Congress in enacting federal immigration law and, in intruding into federal immigration law, improperly enters into an area where Congress has manifested its intent to occupy the entire field.

47. AB-5207 is unconstitutional and invalid as applied to GEO's opportunity to enter into a contract with ICE for the provision of contracted secure

residential care immigration services under conflict, obstacle, and field preemption principles.

## COUNT II
## VIOLATION OF INTERGOVERNMENTAL IMMUNITY

48. Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth herein.

49. GEO, as a contractor for the United States, enjoys and is clothed in the federal government's intergovernmental immunity under the Supremacy Clause.

50. Under the Supremacy Clause, "the activities of the Federal Government are free from regulation by any state." Accordingly, state laws are invalid if they "regulate[ ] the United States directly or discriminate[ ] against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435, (1990); *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir.2010). "A state or local law discriminates against the federal government if it treats someone else better than it treats the government." *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (internal quotation marks omitted).

51. Congress has not authorized the State to directly regulate the federal government's activities with respect to so-called "private detention facilities" like GEO's. AB-5207 gives New Jersey a virtual power of review over ICE's contracting decisions, and effectively prohibits the federal government from operating with its

16

desired personnel and exercising its discretion to arrange for immigration detention in contracted facilities it has deemed appropriate.

52. New Jersey Statute 30:4-91.10 provides: ". . . the Commissioner of Corrections may authorize the confinement of eligible inmates in private facilities." AB-5207 thus unlawfully discriminates against GEO in its capacity as a contractor for the federal government because it targets privately contracted immigration detention services, an area under federal control, while New Jersey law allows other forms of privately contracted detention services for non-federal purposes.

53. Under the related doctrines of intergovernmental immunity and discriminatory intergovernmental immunity, AB-5207 is unconstitutional and invalid because it directly regulates and discriminates against the federal government and those with whom it deals as applied to GEO's contracted immigration detention services, current or prospective, on behalf of ICE.

## PRAYER FOR RELIEF

WHEREFORE, GEO respectfully requests that this Court enter judgment:

a. Declaring that AB-5207, codified at N.J. Stat. Ann. §§ 30:4-8.15 to 8.16, violates the Supremacy Clause of the United States Constitution and is unconstitutional as applied to GEO in its provision of contracted immigration detention facility services for ICE in the state of New Jersey;

b. Preliminarily and permanently enjoining Defendants, as well as their

17

successors, agents, employees, and all those under their supervision, from attempting to enforce AB 5207 so as to interfere with or prohibit GEO from proposing, negotiating, entering into, or implementing a new contract with ICE for the provision of contracted immigration detention facility services;

      c.      Awarding attorneys' fees and costs as permitted by law; and

      d.      Granting such other and further relief as the Court deems just and proper.

## CERTIFICATION

It is hereby certified pursuant to 28 U.S.C. § 1746 and pursuant to L. Civ. R. 11.2 that the matter in controversy is not presently the subject of any other action pending in any court or of an arbitration proceeding to date.

Dated: April 15, 2024

DAVIS WRIGHT TREMAINE LLP

By: */s/ Geoffrey S. Brounell*
    Geoffrey S. Brounell

1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
geoffreybrounell@dwt.com

Scott A. Schipma
(*pro hac vice application forthcoming*)
The GEO Group, Inc.
4955 Technology Way
Boca Raton, FL 33431
scott.schipma@geogroup.com

*Attorneys for Plaintiff The GEO Group, Inc.*

18